UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| CITIBANK, N.A.,<br>701 East 60th Street North<br>Sioux Falls, South Dakota 57104<br><br>    Plaintiff,<br><br>v.<br><br>CECIL SURGERY CENTER, LLC,<br>300 East Pulaski Highway<br>Elkton, MD 21921,<br><br>WOMEN MEDICAL CARE, LLC,<br>16 Henry Way<br>Elkton, MD 21921,<br><br>and<br><br>CHESAPEAKE WOMEN'S CARE, LLC,<br>300 E. Pulaski Highway<br>Elkton, MD 21921,<br><br>    Defendants. | Case No. _____ |

## COMPLAINT FOR JUDGMENT BY CONFESSION

Plaintiff Citibank, N.A. ("Citibank"), by its undersigned counsel, hereby complains for judgment by confession against Defendant Cecil Surgery Center, LLC ("Cecil Surgery" or "Borrower"), as well as Defendants Women Medical Care, LLC ("Women Medical Care") and Chesapeake Women's Care, LLC ("Chesapeake") (together, "Guarantors"). In support thereof, Citibank states as follows:

### Parties, Jurisdiction, and Venue

1. Citibank is a nationally chartered bank, with its principal place of business located at 701 East 60th Street North, Sioux Falls, South Dakota 57104.

2. Cecil Surgery is a Maryland limited liability company, with its principal office located at 300 East Pulaski Highway, Elkton, Maryland 21921. Cecil Surgery's sole member is Joseph M. Knapp ("Knapp"), who is a citizen of Pennsylvania and has an address of 208 Armitage Ct., Lincoln University, Pennsylvania 19352.

3. Women Medical Care is a Maryland limited liability company, with its principal office located at 7 Powel Place, Elkton, Maryland 21921. Women Medical Care's resident agent's address is 16 Henry Way, Elkton, Maryland 21921. Women Medical Care's only members are Zahid Aslam and Maryan Awan, both of whom are citizens of Maryland and have an address of 7 Powel Place, Elkton, Maryland 21921.

4. Chesapeake is a Maryland limited liability company, with its principal office located at 300 East Pulaski Highway, Elkton, Maryland 21921. The members of Chesapeake are Knapp, Women Medical Care, and Samir Khanjar. Samir Khanjar is a citizen of Maryland and has an address of 23 Catherine Drive, Elkton, MD 21921.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties have diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper under 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to the claim occurred in this district.

## General Allegations

**The Cecil Surgery Loan**

7. On July 15, 2012, Cecil Surgery executed and delivered to Citibank that certain U.S. Small Business Administration Note (the "Note"), pursuant to which Cecil Surgery agreed to repay Citibank a total of $1,760,000.00 (the "Cecil Surgery Loan") which Cecil Surgery had

borrowed from Citibank. A genuine and complete copy of the Note is attached hereto as **Exhibit A**.

    8.    The Note contains a confessed judgment provision which states in part as follows:

> If payment of the indebtedness evidenced by this Note, or any part thereof, shall not be made when due and at maturity, by acceleration or otherwise, the undersigned [Cecil Surgery] hereby authorize(s) and empower(s) any attorney of any Court of Record within the United States to appear for the undersigned in any Court, or before any Clerk thereof, and confess judgment against the undersigned in any Court, or before any Clerk thereof, and confess judgment against the undersigned either jointly or severally in favor of the holder of this Note for the amount then due thereon, with the interest thereon aforementioned and the cost of suit and attorney's fees of fifteen percent (15%), hereby waiving and releasing all errors and all rights of exemption, appeal, stay of execution, inquisition and extension upon any levy or real estate or personal property to which the undersigned may otherwise be entitled under the laws of any State or possession of the United States now in force or which may hereafter be passed. If this Note is referred to any attorney for collection, and payment is obtained without the entry of a judgment, then the undersigned shall pay to holder attorney's fees in the amount aforesaid. . . .

(Ex. A § 10.)

    9.    Cecil Surgery executed numerous other documents in connection with the Cecil Surgery Loan as well. These loan documents included, *inter alia*, that certain Collateral Assignment of Lease, Fixture Filing, and Security Agreement (the "Collateral Assignment") executed and delivered by Cecil Surgery on July 13, 2012. A genuine and complete copy of the Collateral Assignment is attached hereto as **Exhibit B**. The Collateral Assignment contains a provision which states that a default under "any promissory note payable to [Citibank] under which [Cecil Surgery] or any Guarantor is an obligor" constitutes an event of default. (Ex. B § 2.06.)

    10.    The Note was also independently guaranteed by, *inter alia*, Chesapeake. A genuine and complete copy of the Unconditional Guarantee executed by Chesapeake (the "Chesapeake Guaranty") is attached as **Exhibit C**.

11. The Chesapeake Guaranty contains a confessed judgment provision which states in part as follows:

> If payment of the indebtedness evidenced by this Note, or any part thereof, shall not be made when due and at maturity, by acceleration or otherwise, the undersigned [Chesapeake] hereby authorize and empower any attorney of any Court of Record within the United States to appear for the undersigned in any Court, or before any Clerk thereof, and confess judgment against the undersigned in any Court, or before any Clerk thereof, and confess judgment against the undersigned either jointly or severally in favor of the holder of this Guarantee for the amount then due thereon, with the interest thereon aforementioned and the cost of suit and attorney's fees of fifteen percent (15%), hereby waiving and releasing all errors and all rights of exemption, appeal, stay of execution, inquisition and extension upon any levy or real estate or personal property to which the undersigned may otherwise be entitled under the laws of any State or possession of the United States now in force or which may hereafter be passed. If this Guarantee is referred to any attorney for collection, and payment is obtained without the entry of a judgment, then the undersigned shall pay to holder attorney's fees in the amount aforesaid. . . . .

(Ex. C § 10.)

12. The Note was also independently guaranteed by, *inter alia*, Women Medical Care. A genuine and complete copy of the Unconditional Guarantee executed by Women Medical Care (the "Women Medical Care Guaranty") is attached as **Exhibit D**.

13. The Women Medical Care Guaranty contains a confessed judgment provision which states in part as follows:

> If payment of the indebtedness evidenced by this Note, or any part thereof, shall not be made when due and at maturity, by acceleration or otherwise, the undersigned [Chesapeake] hereby authorize and empower any attorney of any Court of Record within the United States to appear for the undersigned in any Court, or before any Clerk thereof, and confess judgment against the undersigned in any Court, or before any Clerk thereof, and confess judgment against the undersigned either jointly or severally in favor of the holder of this Guarantee for the amount then due thereon, with the interest thereon aforementioned and the cost of suit and attorney's fees of fifteen percent (15%), hereby waiving and releasing all errors and all rights of exemption, appeal, stay of execution, inquisition and extension upon any levy or real estate or personal property to which the undersigned may otherwise be entitled under the laws of any State or possession of the United States now in force or which may hereafter be passed. If this Guarantee is referred to any attorney for collection, and payment is obtained without the entry of a judgment, then the undersigned shall pay to holder attorney's fees in the amount aforesaid. . . . .

(Ex. D § 10.)

14. The Note, Collateral Assignment, Chesapeake Guaranty, Women Medical Care Guaranty, and all other documents executed in connection with the Cecil Surgery Loan are collectively referred to as the "Cecil Surgery Loan Documents."

**The Chesapeake Loans**

15. Chesapeake, in turn, had previously incurred separate obligations to Citibank. Specifically, on June 22, 2010, Chesapeake had executed and delivered to Citibank two Credit Approval Letters, representing both a term loan extended by Citibank to Chesapeake in the amount of $750,000.00 (the "Chesapeake Term Loan"), and a line of credit extended by Citibank to Chesapeake in the amount of $500,000.00 (the "Chesapeake Line of Credit") (together, the "Chesapeake Loans"). The Chesapeake Loans were subsequently modified by two Amendments dated October 4, 2012. Genuine and complete copies of the Chesapeake Term Loan and Chesapeake Term Loan Amendment are attached hereto as **Exhibits E and F**, respectively, and genuine and complete copies of the Chesapeake Line of Credit and the Chesapeake Line of Credit Amendment are attached hereto as **Exhibits G and H**, respectively.

16. Chesapeake subsequently failed to make required payments on the Chesapeake Loans, and violated several other provisions of the Chesapeake loan documents. (Declaration of Vincent Chan ¶¶ 6-8.) On September 20, 2013, counsel for Citibank issued a letter (the "Chesapeake Demand Letter") pursuant to which Citibank informed Chesapeake that the Chesapeake Loans were in default, accelerated the balances due under the Chesapeake Loans, and demanded payment in full no later than October 11, 2013. A genuine and complete copy of the Chesapeake Demand Letter is attached hereto as **Exhibit I**.

17. Chesapeake has refused to repay the accelerated balance due under the Chesapeake Loans since the date of the Chesapeake Demand Letter. (Chan Decl. ¶ 8.)

**The Cecil Surgery Default**

18. Because Chesapeake was a guarantor of the Cecil Surgery Loan, Chesapeake's failure to make payments and the resulting default under the Chesapeake Loans constituted an event of default under the Cecil Surgery Loan Documents. (*See* Ex. B § 2.06.)

19. On September 20, 2013, counsel for Citibank issued a letter (the "Cecil Surgery Demand Letter") pursuant to which Citibank informed Cecil Surgery that the Cecil Surgery Loan was in default, accelerated the balances due under the Cecil Surgery Loan, and demanded payment in full no later than October 11, 2013. A genuine and complete copy of the Cecil Surgery Demand Letter is attached hereto as **Exhibit J**.

20. Apart from a partial payment made on September 25, 2013, Cecil Surgery has not made any payments on the Cecil Surgery Loan since the issuance of the Cecil Surgery Demand Letter. (Chan Decl. ¶ 9.)

21. As of February 12, 2014, Cecil Surgery and the Guarantors owed a total of $1,704,647.82 under the Cecil Surgery Loan Documents, consisting of $1,478,001.52 in principal, $4,290.31 in interest, $10.62 in late fees, and $222,345.37 attorneys' fees and costs (15% of the balance owed), with interest accruing at the per diem rate of $225.80579. (Chan Decl. ¶ 10.)

22. The accompanying Declaration of Vincent Chan, Vice President of Risk Management at Citibank, in Support of Citibank's Complaint for Judgment by Confession is attached hereto pursuant to Local Rule 108.1(a) and is incorporated by reference herein.

## COUNT I
### Judgment by Confession Against Cecil Surgery Center, LLC

23. Citibank restates and realleges the previous paragraphs as if fully set forth herein.

24. Cecil Surgery is the Borrower under the Note and the Cecil Surgery Loan Documents.

25. An event of default occurred under the Cecil Surgery Loan Documents when Chesapeake, a Guarantor under the Cecil Surgery Loan Documents, defaulted under the terms of the Chesapeake Loans by, *inter alia*, failing to make payments on the Chesapeake Loans when due to Citibank. (Ex. B § 2.06.)

26. As a result, Citibank accelerated the balance due under the Cecil Surgery Loan and demanded immediate repayment of the indebtedness from Cecil Surgery and the Guarantors of the Cecil Surgery Loan on September 20, 2013. (Ex. J.) Since the issuance of the Cecil Surgery Demand Letter, neither Cecil Surgery, nor any of the Guarantors under the Cecil Surgery Loan Documents have paid the full accelerated balance due under the Cecil Surgery Loan as required. (Chan Decl. ¶ 9.)

27. Pursuant to the terms of the Note, Cecil Surgery expressly agreed to allow any attorney-at-law to appear and confess judgment for the unpaid amount owed under the Cecil Surgery Loan. (*See* Ex. A § 10.)

28. As of February 12, 2014, Cecil Surgery owed a total of $1,704,647.82 under the Cecil Surgery Loan Documents, consisting of $1,478,001.52 in principal, $4,290.31 in interest, $10.62 in late fees, and $222,345.37 attorneys' fees and costs (15% of the balance owed), with interest accruing at the per diem rate of $225.80579. (Chan Decl. ¶ 10.)

WHEREFORE, Citibank requests that this Court:

a. Enter judgment by confession in Citibank's favor and against Cecil Surgery in the amount of $1,704,647.82, plus interest accrued at the per diem rate of $225.80579 since February 12, 2014, and

b. Grant such other and further relief as is just and appropriate under the circumstances.

## COUNT II
### Judgment by Confession Against Chesapeake Women's Care, LLC

29. Citibank restates and realleges the previous paragraphs as if fully set forth herein.

30. Chesapeake is a Guarantor under the Note and the Cecil Surgery Loan Documents. (Ex. C.)

31. An event of default occurred under the Cecil Surgery Loan Documents when Chesapeake, a Guarantor under the Cecil Surgery Loan Documents, defaulted under the terms of the Chesapeake Loans by, *inter alia*, failing to make payments on the Chesapeake Loans when due to Citibank. (*See* Ex. C § 10.)

32. As a result, Citibank accelerated the balance due under the Cecil Surgery Loan and demanded immediate repayment of the indebtedness from Cecil Surgery and the Guarantors of the Cecil Surgery Loan, including Chesapeake, on September 20, 2013. (Ex. J.) Since the issuance of the Cecil Surgery Demand Letter, neither Cecil Surgery nor any of the Guarantors under the Cecil Surgery Loan Documents have paid the full accelerated balance due under the Cecil Surgery Loan as required. (Chan Decl. ¶ 9.)

33. Pursuant to the terms of the Chesapeake Guaranty, Chesapeake expressly agreed to allow any attorney-at-law to appear and confess judgment for the unpaid amount owed under the Cecil Surgery Loan. (*See* Ex. C § 10.)

34. As of February 12, 2014, Chesapeake owed a total of $1,704,647.82 under the Cecil Surgery Loan Documents, consisting of $1,478,001.52 in principal, $4,290.31 in interest, $10.62 in late fees, and $222,345.37 attorneys' fees and costs (15% of the balance owed), with interest accruing at the per diem rate of $225.80579. (Chan Decl. ¶ 10.)

WHEREFORE, Citibank requests that this Court:

a. Enter judgment by confession in Citibank's favor and against Chesapeake in the amount of $1,704,647.82, plus interest accrued at the per diem rate of $225.80579 since February 12, 2014, and

b. Grant such other and further relief as is just and appropriate under the circumstances.

## COUNT III
### Judgment by Confession Against Women Medical Care, LLC

35. Citibank restates and realleges the previous paragraphs as if fully set forth herein.

36. Women Medical Care is a Guarantor under the Note and the Cecil Surgery Loan Documents. (Ex. D.)

37. An event of default occurred under the Cecil Surgery Loan Documents when Chesapeake, a Guarantor under the Cecil Surgery Loan Documents, defaulted under the terms of the Chesapeake Loans by, *inter alia*, failing to make payments on the Chesapeake Loans when due to Citibank. (*See* Ex. D § 10.)

38. As a result, Citibank accelerated the balance due under the Cecil Surgery Loan and demanded immediate repayment of the indebtedness from Cecil Surgery and the Guarantors of the Cecil Surgery Loan, including Women Medical Care, on September 20, 2013. (Ex. J.) Since the issuance of the Cecil Surgery Demand Letter, neither Cecil Surgery nor any of the

Guarantors under the Cecil Surgery Loan Documents have paid the full accelerated balance due under the Cecil Surgery Loan as required. (Chan Decl. ¶ 9.)

39. Pursuant to the terms of the Women Medical Care Guaranty, Women Medical Care expressly agreed to allow any attorney-at-law to appear and confess judgment for the unpaid amount owed under the Cecil Surgery Loan. (*See* Ex. D § 10.)

40. As of February 12, 2014, Women Medical Care owed a total of $1,704,647.82 under the Cecil Surgery Loan Documents, consisting of $1,478,001.52 in principal, $4,290.31 in interest, $10.62 in late fees, and $222,345.37 attorneys' fees and costs (15% of the balance owed), with interest accruing at the per diem rate of $225.80579. (Chan Decl. ¶ 10.)

WHEREFORE, Citibank requests that this Court:

a. Enter judgment by confession in Citibank's favor and against Women Medical Care in the amount of $1,704,647.82, plus interest accrued at the per diem rate of $225.80579 since February 12, 2014, and

b. Grant such other and further relief as is just and appropriate under the circumstances.

Dated: February 25, 2014

　　　/s/　　　　　　　　　　
John G. McJunkin, Bar No. 22775
Craig D. Rust, Bar No. 18274
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006-1108
Telephone: (202) 496-7500
Facsimile: (202) 496-7756

*Counsel for Citibank, N.A.*