## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CITIBANK, N.A.** | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| | | **Civil Action No. ELH-14-567** |
| **CECIL SURGERY CENTER, LLC, et al** | * | |
| **Defendants** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM AND ORDER

This case has been referred to the undersigned for review of a complaint for judgment by confession pursuant to 28 U.S.C. §636.  For the following reasons, plaintiff's request that the court enter judgment by confession is DENIED.

Plaintiff Citibank, N.A., is a national bank with its principal place of business in South Dakota.  Defendants Cecil Surgery Center, LLC ("Cecil") and Chesapeake Women's Care, LLC ("Chesapeake") have principal offices located at 300 East Pulaski Highway in Elkton, MD. (ECF No. 1, at ¶¶ 2, 4).  Defendant Women Medical Care, LLC ("Women Medical") has a principal office located at 7 Powel Place in Elkton, MD. (Id., at ¶3).  Joseph M. Knapp is the sole member of Cecil, and a member of Chesapeake.  (Id., at ¶¶ 2, 4.)  Women Medical and Samir Khanjar are also members of Chesapeake.  (Id., at ¶4.)

On June 22, 2010, Chesapeake borrowed $750,000.00 from Citibank and opened a $500,000.00 line of credit with Citibank.  (ECF No.1-5 and 1-7.)  Those debts were not accompanied by confessed judgment provisions in favor of Citibank. (Id.)  Chesapeake was doing business at 300 East Pulaski Highway at the time.  (Id.)

On December 1, 2010, Cecil entered into a lease agreement for the premises of 300 East

Pulaski Highway, Suite 1008.  (ECF No. 1-2, Exh. B.)  On July 13, 2012, Cecil executed a

Collateral Assignment of Lease, Fixture Filing and Security Agreement ("Collateral

Assignment") in favor of Citibank.  (ECF No. 1-2.)  The Collateral Assignment transferred

Cecil's rights under the lease agreement, its interest in fixtures, licenses to do business and

occupy the premises, contracts in favor of Cecil, and intellectual property and business goodwill

of Cecil.  (ECF No. 1-2, at 3–4.)  The Collateral Assignment allows Cecil to remain on the

premises and exercise those rights provided that no "Event of Default" occurs, including non-

payment of a $1,760,000.00 debt evidenced by a "promissory note executed by the Borrower of

even date herewith."  (ECF No. 1-2, at 1–4; §2.01.)  The Collateral Assignment also contains a

"cross default" provision, which provides that "any default under… any promissory note payable

to the Lender under which the Borrower or any Guarantor is an obligor" constitutes an Event of

Default.  (ECF No. 1-2, at 21–22.)

On July 25, 2012, Cecil executed a promissory note (the "Cecil Note") in the amount of

$1,760,000.00 in favor of Citibank.  (ECF No. 1-1.)  The promissory note contains a confessed

judgment provision, which states that in the event of default Citibank may "appear for the

undersigned in any Court… and confess judgment against the undersigned either jointly or

severally in favor of the holder of this Note for the amount then due thereon." (ECF No. 1-1, at

5.)  On July 26, 2012, Chesapeake and Women Medical ("Guarantor" or, collectively,

"Guarantors") signed guarantees for the Cecil Note in favor of Citibank ("Guarantees").  (ECF

Nos. 1-3 and 1-4.)  Those Guarantees contain the same confessed judgment provision as

contained in the Cecil Note.  (See id.)

Citibank now asks this court to enter a judgment in the amount of $1,704,647.82 in its

favor against Cecil and its Guarantors, Chesapeake and Women Medical.  (ECF No.1, at 7–10.)

Citibank notes that Chesapeake defaulted on its $750,000.00 debt and $500,000.00 line of credit

by failing to make required payments on the loan, constituting a default on those loans.  (ECF

No. 1, at 5.)  Citibank argues that because Chesapeake is Cecil's Guarantor, Chesapeake's

default constitutes an Event of Default under the Collateral Assignment in light of the cross

default provision.  Citibank asserts that a default under the Collateral Assignment is a default

under the Cecil Note.  (See ECF No. 1, at 7.)  Citibank issued a demand letter to Cecil on

September 20, 2013 explaining that Chesapeake's failure to make payments constituted a default

on the Cecil Note, and used that default as a basis to accelerate the Cecil Note.  (ECF No. 1-10.)

Cecil has apparently continued to make monthly payments on the Cecil Note, but has failed to

pay the accelerated balance.  (Compare id. with ECF No. 1, ¶28.)  Citibank also seeks confessed

judgment from Cecil's Guarantors, Chesapeake and Women Medical, due to Cecil's failure to

pay the accelerated balance.  (ECF No. 1, at 8–10.)

Under the Local Rules of this court, a party requesting entry of judgment by confession

must file: (1) a complaint requesting the entry of judgment by confession; (2) the written

instrument authorizing confession of judgment and entitling plaintiff to liquidated damages; and

(3) a supporting affidavit made by the plaintiff or plaintiff's representative that describes the

circumstances of the execution of the instrument, the age and education of defendant (if known),

the amount due, and the postal address of the defendant.  Local Rule 108.1.a.  The court may

only enter judgment by confession if it finds that the aforementioned papers establish, on their

face that: (1) defendant made a voluntary, knowing, and intelligent waiver of the right to notice

and a prejudgment hearing on the merits of plaintiff's claim; and (2) plaintiff has a meritorious

claim for liquidated damages against the defendant.  Local Rule 108.1.b.  The plaintiff must

make a prima facie showing that it is entitled to judgment.  Id.  This requires evidence that would

entitle the proponent to a favorable ruling in the absence of evidence to the contrary.  In re:

Friedman, 436 F. Supp. 234, 237 (D. Md. 1977).   These requirements exist to ensure that the

entry of judgment by confession does not violate the due process rights of the defendants.  See

D.H. Overmyer Co., Inc. of Ohio, et al v. Frick Co., 405 U.S. 174, 187-88 (1972).

Plaintiff alleges that a default under the Cecil Note has occurred in two ways: (1) a cross

default has occurred under the Collateral Assignment, which in turn constitutes a default under

the Cecil Note; and (2) Cecil has failed to pay the accelerated balance on the note after plaintiff's

September 20, 2013 demand letter requesting accelerated payment of the Cecil Note.  (ECF No.

1, ¶¶ 25, 26.)   Plaintiff alleges that these events of default entitle it to judgment by confession

against Cecil and its Guarantors, Chesapeake and Women Medical. For the reasons noted below,

the undersigned cannot conclude that a default under the Collateral Assignment has caused a

default under the Cecil Note and Guarantees because of discrepancies in the dates of the

documents provided by plaintiff.  Accordingly, the undersigned concludes that the plaintiff has

failed to demonstrate that a default under the Cecil Note occurred under either of its theories or

that it is entitled to confessed judgment against Cecil or the Guarantors.

Plaintiff's first argument, that a cross default under the Collateral Assignment triggered a

default under the Cecil Note, fails because of a date discrepancy between the Cecil Note and the

Collateral Assignment.  The Collateral Assignment contains a "cross default" provision which

creates an event of default if there is "any default under… any promissory note payable to

[Citibank] under which the Borrower *or any Guarantor* is an obligor." (ECF No. 1-2, § 2.06

(emphasis added).)  Plaintiff argues that Chesapeake, a Guarantor of the Cecil Note, defaulted on

unrelated indebtedness to Citibank on September 20, 2013 and that this default triggers the cross

default provision in the Collateral Assignment, thereby creating a default under the Cecil Note.

(ECF No. 1 ¶ 18.)[1]  The flaw in this argument, however, is that the Collateral Assignment was

executed on **July 13, 2012** as security for a "promissory note executed by the Borrower *of even*

*date herewith*."  (ECF No. 1-2, at 1 (emphasis added).)  The Cecil Note, on the other hand, is

dated **July 25, 2012**, not of "even date" with the Collateral Assignment.  Plaintiff has not offered

any other documentation to link the Collateral Assignment to the Cecil Note.  Given this

unexplained date discrepancy, the undersigned cannot conclude that plaintiff has sufficiently

demonstrated that the "note" referred to in the Collateral Assignment is, indeed, the Cecil Note.

Given that the confessed judgment provision in favor of Citibank is found in the Cecil Note, not

the Collateral Assignment, plaintiff has failed to make a prima facie showing that it has a

meritorious claim for judgment by confession against Cecil under its first theory of default.

The second event of default under the Cecil Note argued by Citibank is Cecil's failure to

pay the accelerated balance upon demand.  (ECF No. 1, at ¶ 26.)  The Cecil Note provides for

"Lender's Rights if There is a Default," which includes the right to "require immediate payment

of all amounts owing under this Note."  (ECF No. 1-1 ¶ 5.)  Thus, the right to accelerate the debt

is contingent on the happening of an event of default.  ( Id.; see also Santini v. Fritkin, 240 Md.

542, 546 (1965) (where a note contains an acceleration provision, the holder of a note may elect

to accelerate upon the happening of an event of default).)   For the reasons stated above, plaintiff

has not established a prima facie case that a default on the July 25, 2012 Cecil Note occurred.

Plaintiff, therefore, has failed to demonstrate that it was entitled to require immediate payment of

the balance owed under the note.   Cecil's failure to pay the accelerated balance does not

constitute a separate default if the underlying reason for accelerating the note (i.e., default) has

not adequately been established.  Accordingly, Citibank's request for a confessed judgment

---

[1] For purposes of this analysis, it is assumed that Chesapeake is a Guarantor within the meaning of §2.06 of the Collateral Assignment, and that Chesapeake's default on unrelated indebtedness constitutes a default under the "cross default" provision of the Collateral Assignment.

against Cecil on this basis also fails.

Plaintiff also seeks judgment by confession against Chesapeake and Women Medical by virtue of their Guarantees of the Cecil Note. (ECF No. 1, ¶¶ 33, 39.) Citibank alleges that because a default on the Cecil Note has occurred, Chesapeake and Women Medical are obligated to plaintiff as Guarantors for the full accelerated balance. (Id., ¶¶ 32, 38.) These Guarantees require the Guarantors to pay "all amounts owing under" the Cecil Note when Citibank makes written demand upon the Guarantor. (ECF Nos. 1-3, ¶ 1; 1-4, ¶1.) Because the court finds, as explained above, that plaintiff has not made a prima facie showing that a default on the Cecil Note has occurred, it follows that plaintiff's request for judgment by confession against Chesapeake and Women Medical must also be denied.

It should also be noted that, even if a default on the Cecil Note has occurred, plaintiff has failed to make a prima facie showing that the Guarantees signed by Chesapeake and Women Medical relate to the Cecil Note because there is also a date discrepancy between the Guarantees and the Cecil Note. The Guarantee signed by Chesapeake "unconditionally Guarantees payment to Lender of all amounts owing under the Note." (ECF No. 1-3, ¶1.) The Guarantee, which is dated **July 26, 2012**, defines the "Note" as "the promissory note dated *of even date herewith*." (ECF No. 1-3, ¶2. (emphasis added).) The Guarantee signed by Women Medical, also dated **July 26, 2012**, contains the same language. (ECF No. 1-4, ¶¶1, 2.) The Cecil Note, on the other hand, is dated **July 25, 2012**. Given that the Guarantees fail to clearly relate to the Cecil Note, which itself fails to clearly relate to the Collateral Assignment, the documentation provided by plaintiff does not sufficiently demonstrate that a default under the Collateral Assignment obligates Chesapeake and Women Medical to plaintiff pursuant to the Guarantees. Due to the ambiguity in the documentation provided by plaintiff, plaintiff has failed to make a prima facie

showing that it has a meritorious claim for liquidated damages against Chesapeake and Women Medical.

As noted above, in order for the court to enter judgment by confession against Cecil, Chesapeake, and Women Medical, plaintiff must make a prima facie showing that it is entitled to a confessed judgment by establishing that: (1) defendant made a voluntary, knowing, and intelligent waiver of the right to notice and a prejudgment hearing on the merits of plaintiff's claim; and (2) plaintiff has a meritorious claim for liquidated damages against the defendant. Local Rule 108.1.b.  In light of the discrepancies in the dates on the documents provided by plaintiff, the undersigned cannot conclude that plaintiff has made the requisite showing. Accordingly, plaintiff's request for entry of judgment by confession must be denied.

For the foregoing reasons, IT IS HEREBY ORDERED this ___20th___ day of May, 2014, that plaintiff's request for entry of judgment by confession against Cecil Surgery Center, LLC, Women Medical Care, LLC and Chesapeake Women's Care, LLC is DENIED.  If plaintiff wishes to proceed, it must serve the complaint in this action upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.  See Local Rule 108.1.e (stating that, where judgment by confession is not appropriate, the defendant must be given leave to file a pleading, and "the case shall stand for trial"); accord Sheet Metal Workers Local 19, et al. v. East Coast Mechanical, No. 92-2066, 1992 WL 103012, at *2 (E.D. Pa. May 7, 1992).

/s/

_____

Beth P. Gesner
United States Magistrate Judge